UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIVERKEEPER, INC.<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br><br>HUDSON WHOLESALERS<br>RESTAURANT EQUIPMENT,<br>　　　　　　　　　Defendant. | Case No.:　1:22-cv-00564 (BKS/CFH)<br><br>Judge:<br><br><br>COMPLAINT |

## COMPLAINT

NOW COMES, the plaintiff, Riverkeeper, Inc. ("Plaintiff" or "Riverkeeper"), by and through its attorneys, Pace Environmental Litigation Clinic, and hereby alleges the following Complaint against the defendant, Hudson Wholesalers Restaurant Equipment ("Hudson" or "Defendant").

### I.　　INTRODUCTION

1.　　Stormwater runoff is one of the most significant sources of water pollution in the nation, comparable to, if not greater than, contamination from industrial and sewage sources. With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Hudson River, its tributaries and other receiving waters in this District.

2.　　This matter is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-388 ("Clean Water Act," "the Act," or "CWA") to address and abate Defendant's ongoing and continuous violations of the Act.

3.　　Defendant discharges stormwater runoff from its facility located at 1210 Berme Road, Kerhonkson, NY 12446 ("the Facility") into waters of the United States and has failed to comply with the conditions of the State of New York General Permit for the Discharge of

1

Stormwater Associated with Industrial Activity, (GP-0-17-004) (the 2018 General Permit), issued by the New York State Department of Environmental Conservation (DEC), in violation of Section 402(p) of the CWA, 33 U.S.C. § 1342(p) and 40 C.F.R. § 123.25.

4. Defendant's stormwater discharges contribute to this endemic stormwater pollution problem. The Facility includes an enclosed 4,500 square foot woodworking shop wherein Defendant's produce custom wood pieces, engage in furniture repair, and stores several pieces of woodworking equipment outside.

5. Defendant's wrongful activities at the Facility include but are not limited to engaging in industrial activities without a permit, failing to apply for permit coverage, and failing to comply with the conditions of the General Permit. As precipitation comes into contact with pollutants generated by these activities, it conveys those pollutants into nearby surface waters. Contaminated stormwater discharges such as those from the Facility can and must be controlled to the fullest extent required by law in order to allow these water bodies a fighting chance to regain their health.

## II.   JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331.

7. On January 27, 2022, Plaintiff provided notice of Defendant's violation of the Act and of its intention to file suit against Defendant to: (1) Defendant; (2) the Administrator of the United States Environmental Protection Agency ("EPA"); (3) the Regional Administrator of the EPA Region II; and (4) the Commissioner of DEC, as required by the Act, 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1-135.3. A true and correct copy of Plaintiff's notice letter is attached as Exhibit A, and it is incorporated by reference.

8. Plaintiff has complied with the notice requirements under Section 505(b)(1) of the CWA, 33 U.S.C. § 1365(b)(1).

9. More than sixty (60) days have passed since the notice letter was served on Defendant and the state and federal agencies.

10. Neither the United States nor the State of New York commenced or are diligently prosecuting a civil or criminal action to redress the violations alleged in this complaint. CWA § 505(b)(1)(B); 33 U.S.C. § 1365(b)(1)(B).

11. Our claims are not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

12. Venue is proper in the Northern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of the violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

### III.  PARTIES

13. Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New York, with its principal place of business in Ossining, New York. Riverkeeper's mission includes safeguarding the ecological and biological integrity of the Hudson River and its tributaries.  Riverkeeper has more than 3,000 members, many of whom reside near and/or use and enjoy the Hudson River and its tributaries, including the Mine Hole Brook which discharges into Rondout Creek, which are polluted by industrial stormwater runoff from the Facility. The Brook is about 75 feet from the edge of the facility.

14. Water quality in the Hudson River and its tributaries directly affects the health, recreational, aesthetic, commercial, and environmental interests of Riverkeeper's members. The

interests of Riverkeeper's members are adversely affected by Defendant's failure to comply with the requirements of the Clean Water Act.

15. Defendant is a corporation under the laws of the State of New York, which owns and operates the Facility located at 1210 Berme Road, Kerhonkson, NY 12446.

### IV. STATUTORY AND REGULATORY BACKGROUND

#### A. The Clean Water Act

16. The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit. A NPDES permit requires dischargers of pollutants to comply with various limitations.

17. NPDES permits are issued by EPA or by States that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA. 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

18. In New York, the authority to issue NPDES permits is delegated to the DEC. NPDES Permits issues by the State are referred to as State Pollutant Discharge Elimination System ("SPDES") permits.

#### B. Stormwater Permits

19. In 1987, to better regulate pollution conveyed by stormwater runoff, Congress enacted Section 402(p) of the CWA, 33 U.S.C. § 1342(p), entitled "Municipal and Industrial Stormwater Discharges."

20. Section 402(p) establishes a framework for regulating municipal and industrial stormwater discharges under the NPDES program. 33 U.S.C. § 1342(p). Pursuant to Section 402

of the CWA, 33 U.S.C. § 1342, EPA promulgated stormwater discharge regulations at 40 C.F.R. § 122.26.

21. In promulgating those regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels and that, on an annual basis, pollutant levels in stormwater runoff can exceed by an order of magnitude the levels discharged by municipal sewage treatment plants. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

22. Sections 402(p) of the CWA, 33 U.S.C. § 1342(p) and the stormwater discharge regulations at 40 C.F.R. § 122.26 require NPDES permits for stormwater discharges "associated with industrial activity."

23. 40 C.F.R. § 122.26(c)(1) provides that dischargers of stormwater associated with industrial activity must apply for an individual permit, apply for a permit through a group application, or seek coverage under a general permit.

24. 40 C.F.R, § 122.26(b)(13) defines "storm water" to include stormwater runoff, snow melt runoff, and surface runoff and drainage.

25. 40 C.F.R. § 122.26(b)(14)(vi) specifies that "storm water discharge associated with industrial activity" includes stormwater discharge from facilities classified under either Standard Industrial Classification (SIC) 2499, which includes facilities engaged in wood products, not elsewhere classified in the SIC and Sector A of the MSGP. Facilities in those industrial categories must obtain NPDES permit coverage for their stormwater discharges.

### C. New York's General Permit for the Discharge of Stormwater Associated with Industrial Activity

26. As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York. The current version

of the "Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity," Permit No. GP-0-17-004 (the "General Permit") came into effect on March 1, 2018 and remains in effect until February 28, 2023.

27. In order to discharge polluted stormwater lawfully in New York, industrial dischargers must obtain coverage under the General Permit and comply with its terms or obtain coverage under and comply with an individual NPDES permit.

28. To obtain coverage under the General Permit, a facility discharging stormwater associated with industrial activity is required to submit to DEC a registration form called a "Notice of Intent" to be covered under the General Permit.

29. The permit coverage becomes effective 30 calendar days after the date the Notice of Intent is received by DEC.

30. In order to comply with the General Permit, a facility owner or operator must reduce the discharge of pollution from the facility to the extent practicable through use of the best available technology for the industry.

31. The owner or operator also must comply with numeric effluent limitations on the quantity and concentration of pollutants discharged from the facility established in the General Permit, as well as narrative (non-numeric) effluent limits established in the General Permit.

32. Typically, facility owners and operators reduce pollution to the extent practicable through use of the best available technology for the industry, and comply with effluent limitations, by adopting "best management practices" that reduce the discharge of polluted stormwater. Best management practices include both changes to industrial practices and activities (for example, more frequent inspections and site clean ups) and structural changes to the property that prevent stormwater from coming into contact with pollutants in the first place

and that otherwise reduce the amount of polluted stormwater eventually discharged from the facility.

33. Before submitting a registration form to DEC, the owner or operator of a facility discharging stormwater associated with industrial activity must first prepare, make available, and implement a Storm Water Pollution Prevention Plan (SWPPP).  Among other things, the SWPPP must document the best management practices that the facility has implemented to ensure that it is reducing the discharge of pollution from the facility to the extent practicable through use of the best available technology for the industry.

34. In addition, the owner or operator must perform inspections, conduct monitoring and sampling, and meet other requirements of the General Permit.  The SWPPP must establish a plan for and document compliance with these inspection, monitoring, sampling, and other requirements as well.

### D.  CWA Citizen Enforcement Suits

35. Under CWA Section 505(a)(1), 33 U.S.C. § 1365(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA.

36. Such enforcement action under CWA Section 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  *See* CWA Section 505(f), 33 U.S.C. § 1365(f).

37. Declaratory relief in such cases is authorized by 28 U.S.C. § 2201–02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

38. Injunctive relief is authorized by Section 505(a) of the Act, 33 U.S.C. § 1365(a).

39. Violators of the Act are also subject to an assessment of civil penalties of up to $56,461 per day per violation for all violations of the Act occurred after November 2, 2015 and are assessed after July 15, 2021. *See* 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. part 19 (updating statutory civil penalties to adjust for inflation).

### V.    STATEMENT OF FACTS

#### A.  Defendant Controls Industrial Activities at the Facility

40. Defendant, Hudson Wholesalers Restaurant Equipment, is a corporate entity that owns and operates the Facility located at 1210 Berme Road, Kerhonkson, NY 12446.

41. Defendant controls the industrial activities that place at the Facility.

42. Defendant is responsible for managing stormwater at the Facility associated with industrial activities in compliance with the CWA.

#### B.  Industrial Activities at Defendant's Facility Expose Pollutants to Stormwater

43. Defendant engages in industrial activities which includes engaging in storage of restaurant equipment, construction equipment, furniture, vending equipment, brewing equipment, vehicles and a Zamboni. Some items were and are stored outdoors including a pile of tires and a refuse from rental unit cleanouts. There were three oil tanks on site with one in operation.

44. The enclosed facility has a 4,500 square foot woodworking shop wherein they produce custom wood pieces and engage in furniture repair. Several pieces of wood woodworking equipment were and are stored outside.

45. The activities described in the preceding paragraphs are represented under Standard Industrial Classification Codes ("SIC Codes") 2499 (wood products, not elsewhere

classified) and Sector A of the MSGP; therefore, the Facility requires coverage under the MSGP permit system.

46. Stormwater discharges associated with industrial activities with SIC Code 24 requires a State NPDES permit. 40 C.F.R. § 122.26.

47. Code 24 falls under Sector A for timber products.

48. The General Permit requires Sector A facilities to monitor their stormwater discharges for the pollutants of concern listed in Table VII-A-2. This table sets forth benchmark monitoring requirements for certain pollutants of concern such as chemical oxygen demand and total suspended solids.

49. By discharging stormwater associated with industrial activity without complying with the General Permit, Defendant is violating CWA Section 301(a) and 402(a) and (p).

## C. Defendant Discharges Stormwater from the Facility to Waters of the United States

50. When over 0.1 inches accumulated precipitation falls on and flows over exposed materials, fluids, and particulates, becoming polluted stormwater.

51. Polluted stormwater discharges flow into Mine Hole Brook which discharges into Rondout Creek.

52. The Rondout Creek is a "water of the Unites States," as defined in 40 C.F.R. § 122.2 and, therefore, a "navigable water" as defined in CWA § 502(7), 33 U.S.C. 1362(7). The Mine Hole Brook is a tributary of a water of the United States, thus making it also a water of the United States. 33 C.F.R. Part 328.

## D. Defendant Has Not Obtained a Permit for these Discharges

53. On January 27, 2022, Plaintiff sent Defendant, via certified mail, the Notice of Intent to Sue, as noted above and attached to this complaint as Exhibit A.

54. DEC staff inspected the facility on February 23, 2022.

55. Based on the site visit, DEC determined the Facility requires a coverage under the MSGP permit system.

56. DEC issued a Notice of Violation on March 9, 2022 requiring Defendant to develop and implement a Stormwater Prevention Plan (SWPPP) in accordance with the provisions of the MSGP prior to submission of a Notice of Intent to obtain coverage.

57. To Plaintiff's knowledge, DEC has not commenced and is not prosecuting an action against Defendant as of the filing of this lawsuit. The Defendant still has not sought coverage since DEC issued the violation.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discharge of Contaminated Stormwater in
### Violation of Permit Conditions and the CWA
### (Violations of 33 U.S.C. §§ 1311, 1343)

58. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

59. Section 301(a) of the Act, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

60. Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

61. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

62. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, industrial wastes, chemical wastes, biological materials, rocks, sand, and garbage discharged into water.

63. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

64. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

65. 40 C.F.R. § 122.2 defines "waters of the United States" to include, among other things: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries to such waters; (iv) wetlands adjacent to such waters or their tributaries; and (v) all other waters the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce.

66. Section 402(p) of the CWA, 33 U.S.C. § 1342(p) and the implementing regulation found at 40 C.F.R. § 122.26(a)(1)(i) require that facilities discharging stormwater associated with industrial activity obtain and operate in compliance with a NPDES permit.

67. Defendant has discharged and continues to discharge stormwater associated with industrial activity that contains pollutants from point sources to waters of the United States.

68. As of the date of the filing of this complaint, Defendant is not complying with the MSGP as they have failed to create and implement a SWPPP.

69. Each and every day on which Defendant discharges stormwater associated with industrial activity in violation of conditions of the SPDES permit is a separate and distinct violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342.

70. Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

71. The remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury to the waters of the State.

72. The remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant.

73. The permanent injunction being sought would not hurt public interest.

74. Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan
### (Violations of 33 U.S.C. §§ 1311, 1342)

75. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

76. Part III of the General Permit requires industrial dischargers to develop, implement, and maintain compliance with a Stormwater Pollution Prevention Plan ("SWPPP").

77. As described in Part III.A of the General Permit, the SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity.

78. Further, the SWPPP must describe and ensure the implementation of best management practices that minimize the discharge of pollutants in stormwater and that assure

compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.

79. The SWPPP must address, at a minimum: (1) each of the universally applicable elements; (2) each of the applicable sector-specific plan elements specified in Part VII of the General Permit and, (3) as applicable, each of the additional special requirements listed in Part III.E of the General Permit for industrial activities that discharge through a municipal separate storm sewer or to impaired waterbodies, activities that take place at facilities that report under the federal Emergency Planning and Community Right to Know Act, and facilities that use secondary containment measures. The SWPPP must include records and documentation of compliance with each of these elements and requirements.

80. The SWPPP must be representative of current site conditions and kept up to date.

81. The SWPPP must be signed in accordance with Part III.C of General Permit.

82. The SWPPP must be kept on-site, at the Facility, at all times.

83. The SWPPP must be prepared and must provide for compliance with the terms of the General Permit on or before the date of submission of a Notice of Intent to be covered under the General Permit.

84. Because the industrial activity carried out at the Facility is categorized in SIC Code 2499, Defendant must include sector-specific SWPPP elements specified in Part VII of the General Permit for Sector A, in addition to the SWPPP elements set forth in Part III of the General Permit.

85. Upon information and belief, as of the filing date of this complaint Defendant has not developed a SWPPP.

86. Upon information and belief, Defendant has failed and continues to fail to develop, implement, and maintain compliance with an adequate SWPPP for the Facility, as required by the General Permit and to take the other SWPPP-related actions required by the General Permit and described herein.

87. Each and every day on which Defendant fails to comply with the General Permit's SWPPP requirements is a separate and distinct violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342.

88. Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

89. Wherefore, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Failure to Implement Adequate Control Measures and Best Management Practices that meet the best available technology standards**
**(Violations of 33 U.S.C. §§ 1311, 1342)**

90. Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

91. The General Permit, Parts II.D and VII, requires Defendant implement mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the Facility.

92. The control measures are used to reduce the discharge of pollution from the facility through use of the best available technology for the industry in order to comply with both numeric and narrative effluent limits contained in the permit.

93. For example, Part II.A of the General Permit requires Defendant minimize the exposure of pollutants to stormwater at the Facility and – to the extent pollutants are exposed to

14

stormwater despite Defendants best efforts – minimize the ultimate discharge of those pollutants in stormwater from the Facility.

94. Under the Part II of the General Permit, the term "minimize" means to reduce and/or eliminate to the extent achievable using control measures (including Best Management Practices ("BMPs") selected and designed in accordance with Part II.D) that are technologically available and economically practicable and achievable in light of best industry practice.

95. To "minimize" the discharge of pollutants as required by the General Permit, the facility's BMPs must meet the Clean Water Act standards of Best Available Technology Economically Achievable ("BAT" or "BATEA") or Best Conventional Pollutant Control Technology ("BCT"), depending upon the type of pollutant being discharged. CWA § 301(b)(2)(A), (E); 33 U.S.C. § 1311(b)(2)(A), (E).

96. Defendant is not covered by an individual SPDES permit or the General Permit for its discharges of stormwater associated with industrial activity from the Facility.

97. Defendant must also implement additional sector-specific control measures specified in Part VII of the General Permit.

98. Riverkeeper is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendants have not implemented adequate control measures or BMPs required by the General Permit.

99. Each day that Defendants have failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

100. Defendants continue to be in violation of the BAT/BCT requirements each day that they fail to develop and fully implement BAT/BCT at the Facility.

## FOURTH CAUSE OF ACTION
### Failure to Conduct Routine Site Inspections and Comply with General Monitoring, Recordkeeping, and Reporting Requirements Under the General Permit (Violations of CWA Sections 301 and 402, 33 U.S.C. §§ 1311, 1342)

101.   Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

102.   The General Permit requires facility operators to implement monitoring and reporting requirements that will allow facility operators to determine whether they have adequately reduced the level of pollutants in storm water runoff through the development and proper implementation of the facility's SWPPP. Defendants have failed to monitor and report discharges from multiple unpermitted stormwater discharge locations at the Facility.

103.   Defendants have also failed to monitor all of the outfalls that Defendants have identified as discharging stormwater from the Facility, in violation of their SPDES Permit.

104.   Defendants have also failed to sample its stormwater discharges for all required analytes associated with their industrial activities, in violation of their SPDES Permit.

105.   Each and every day on which Defendants fail to comply with any of the General Permit's inspection, monitoring, recordkeeping, and reporting requirements is a separate and distinct violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342. These failures are ongoing and continuous violations of the Act.

## FIFTH CAUSE OF ACTION
### Failure to Obtain Valid National Pollutant Discharge Elimination System Permit Coverage
### (Violations of 33 U.S.C. §§ 1311, 1342)

106.   Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

107.   A NPDES permit will allow the holder to discharge pollutants at levels below thresholds incorporated in the permit. 33 U.S.C. § 1342.

16

108. The CWA authorizes each state to implement the NPDES through the state's own permit program as long as it conforms to federal guidelines approved by the EPA Administrator. 33 U.S.C. § 1342(b).

109. In New York, the DEC administers NPDES permits which are referred to as SPDES permits. N.Y. Envtl. Conserv. Law §§ 17-0105(13), 17-0701.

110. The DEC issues SPDES general permits for certain categories of regulated discharges, including stormwater runoff. N.Y. Comp. Codes R. & Regs. tit. 6, § 750-1.21.

111. The DEC is able to issue a general permit to cover a category of point sources in a stated geographical area under certain circumstances, and may further authorize discharges or potential discharges "for storm water from construction activities as defined under 40 CFR 122.26(b)(14)(x)" and for "storm water from industrial activities as defined and allowed under 40 CFR 122.26(b)(14)(i)-(ix) and (xi)[.]" 6 NYCRR 750-1.21.

112. Under 40 C.F.R. § 122.26, stormwater discharges associated with industrial activities with SIC Codes 24 require a NPDES permit.

113. Hudson Wholesaler's industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of Section 502(12) of the CWA and a "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) from the Facility.

114. By discharging stormwater associated with industrial activity without complying with the General Permit, Hudson Wholesalers is violating CWA Section 301(a) and 402(a) and (p).

## VII.   PRAYER FOR RELIEF

115. Wherefore, Plaintiff respectfully requests that this Court grant the following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

 (a) Declare Defendant to have violated, and to be in violation of, the Act as alleged herein;

 (b) Enjoin Defendant from discharging pollutants from the Facility except as authorized by and in compliance with a NPDES permit;

 (c) Order Defendant to immediately comply fully with, all applicable requirements of the General Permit (or an individual permit that is at least as stringent);

 (d) Order Defendant to take appropriate actions to remediate the harm caused by the violations of its NPDES permit and the CWA, to the extent possible;

 (e) Order Defendant to pay civil penalties of up to $56,461 per day per violation for all violations of the Act occurred after November 2, 2015 and are assessed after July 15, 2021.  33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. part 19 (updating statutory civil penalties to adjust for inflation);

 (f) Order Defendant to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorneys', witness, and consultant fees, and other costs, in accordance with Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

 (g) Award any such other and further relief as this Court may deem appropriate.

DATED at White Plains, New York on this 24th day of May, 2022.

                Respectfully submitted,

By: _____
                Todd Ommen, Esq.
                PACE ENVIRONMENTAL LITIGATION CLINIC
                Elisabeth Haub School of Law
                78 N. Broadway
                White Plains, NY 10603
                (914) 422-4343
                tommen@law.pace.edu