**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**RIVERKEEPER, INC.,**

                                        **Plaintiff,**                    1:22-cv-00564 (BKS/CFH)

**v.**

**HUDSON WHOLESALERS**
**RESTAURANT EQUIPMENT,**

                                        **Defendant.**

---

**Appearances:**

*For Plaintiff:*
Todd D. Ommen
Pace Environmental Litigation Clinic
78 North Broadway
White Plains, NY 10603

*For Defendant:*
Joseph F. Castiglione
William A. Hurst
Young, Sommer Law Firm
Executive Woods
Five Palisades Drive
Albany, NY 12205

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Riverkeeper, Inc. brings this action against Defendant Hudson Wholesalers

Restaurant Equipment[1] alleging violations of the Federal Water Pollution Control Act,

---

[1] According to the parties' motion papers, the correct name of the defendant in this case is "Hudson Valley Restaurant Equipment," not "Hudson Wholesalers Restaurant Equipment."

commonly known as the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*  (Dkt. No. 1).

Presently before the Court is Plaintiff's motion to amend the Complaint.  (Dkt. No. 19).

Defendant opposes amendment and cross-moves to dismiss and/or for judgment on the pleadings

pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.  (Dkt. No.

24).  The parties have also submitted response and reply papers to their respective motions, as

well as supplemental briefs at the direction of the Court.  (Dkt. Nos. 31, 35, 42–43).  For the

following reasons, Plaintiff's motion is denied and Defendant's motion is granted.

## II.    BACKGROUND

### A.    Legal Framework

"Congress passed the Clean Water Act in 1972 to 'restore and maintain the chemical,

physical, and biological integrity of the Nation's waters.'"  *Decker v. Nw. Envtl. Def. Ctr.*, 568

U.S. 597, 602 (2013) (quoting 33 U.S.C. § 1251(a)).  "A central provision of the Act is its

requirement that individuals, corporations, and governments secure National Pollutant Discharge

Elimination System ('NPDES') permits before discharging pollution from any point source into

the navigable waters of the United States."  *Id*. (citing 33 U.S.C. § 1311(a)).  "To that end,

Section 301(a) of the CWA prohibits anyone from discharging any pollutant, '[e]xcept as in

compliance with' particular sections of the Act, including 33 U.S.C. § 1342. … Outside of these

allowances, 'the discharge of any pollutant by any person shall be unlawful.'"  *Soundkeeper, Inc.

v. A & B Auto Salvage, Inc.*, 19 F. Supp. 3d 426, 431 (D. Conn. 2014) (quoting *Decker*, 568 U.S.

at 601) (internal citation omitted).  The CWA gives the Environmental Protection Agency

("EPA") authority to issue NPDES permits and to delegate permit granting authority to States

that establish their own State Pollutant Discharge Elimination System ("SPDES").  *See* 33

U.S.C. § 1342(b).

**B.      Facts[2]**

Defendant owns and operates a facility located at 1210 Berme Road in Kerhonkson, New

York.  (Dkt. No. 19-1, ¶¶ 3, 42).  The facility includes an enclosed 4,500 square foot

woodworking shop where Defendant produces custom wood pieces and engages in furniture

repair; the facility also includes a 3,000 square foot marble and granite shop.  (*Id*., ¶ 4).  Outside

the facility, Defendant stores several pieces of woodworking and kitchen equipment and other

materials, residuals, products, and refuse associated with past or present industrial activity.  (*Id*.).

Other items stored outdoors include a pile of tires and a refuse pile; there are three oil tanks on

site with one in operation.  (*Id.*, ¶ 45).  Defendant's facility is located approximately 75 feet from

Mine Hole Brook.  (*Id*., ¶ 13).

Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization whose mission

includes "safeguarding the ecological and biological integrity of the Hudson River and its

tributaries."  (*Id.*).  Riverkeeper has more than 3,000 members, many of whom "reside near

and/or use" and enjoy the Hudson River and its tributaries, including the Mine Hole Brook,

which discharges into Rondout Creek.  (*Id.*).  Plaintiff alleges that stormwater polluted by

Defendant flows into these waters.  (*Id.*, ¶ 54).  Plaintiff further alleges that "water quality in the

Hudson River and its tributaries directly affects the health, recreational, aesthetic, commercial,

and environmental interests of Riverkeeper's members."  (*Id.*).

On January 27, 2022, Plaintiff sent to Defendant a Notice of Violation and Intent to File

Suit under the CWA.  (Dkt. No. 19-5).  In general, Plaintiff stated that it intended to take legal

action because Defendant "is discharging polluted stormwater from its facility, located at 1210

---

[2] The facts herein are primarily drawn from the Proposed First Amended Complaint.  (Dkt. No. 19-1).  The Court
assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life
Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To the extent additional facts beyond the pleadings are relevant to subject
matter jurisdiction, the Court will discuss them as necessary below.

Berme Road, Kerhonkson, NY . . . to Mine Hole Brook, which discharges into Rondout Creek—a water of the United States—without a CWA permit." (*Id.*, at 3). Plaintiff claimed that Defendant stores uncovered materials outdoors on its property, "which when exposed to stormwater, discharges pollutants to waters of the U.S." (*Id.*).

On February 23, 2022, officials from the New York State Department of Environmental Conservation ("DEC") visited the facility; the DEC determined that the facility required a Multi-Sector General Permit for Stormwater Discharges Associated with General Activity ("MSG Permit"). (Dkt. No. 19-1, ¶¶ 57–58). Plaintiff alleges that the DEC found numerous items at the site associated with industrial activity that were exposed to precipitation. (*Id.*, ¶ 67). The DEC issued a Notice of Violation on March 9, 2022, requiring Defendant to develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with the MSG Permit prior to submission of a Notice of Intent to obtain coverage. (*Id.*, ¶ 59).

On or about July 13, 2022, Defendant submitted to the DEC a No Exposure Certification Form. (*Id.*, ¶ 61). On the Form, Defendant represented that the following items are not exposed to precipitation: materials or products stored outdoors; industrial machinery or equipment that is being used, stored, or cleaned; material or residuals on the ground; material or products from past industrial activity; materials or products during loading/unloading/transport; and waste material. (*Id.*, ¶ 66). Based on Defendant's submitted information, the DEC granted Defendant a Conditional No Exposure Certification on December 13, 2022. (*Id.*, ¶ 62).

According to Plaintiff, the DEC's Conditional No Exposure Certification states that "[i]t is not, however, a Department determination of the validity of the information [Defendant] provided," and that "[a]n important aspect of this certification requires that [Defendant] ha[s] correctly determined whether [Defendant is] eligible for permitting exclusion under MSGP."

(*Id.*, ¶ 63).  Plaintiff alleges that the Conditional No Exposure Certification "was explicitly conditioned on the accuracy of numerous false representations made in Defendant's July 13, 2022 No Exposure Certification form."  (*Id.*, ¶ 82).  Finally, Plaintiff alleges that despite the Conditional No Exposure Certification, "various materials, residuals, and/or products remain at the site exposed to precipitation" and that Defendant "continues to discharge stormwater associated with industrial activity that contains pollutants from point sources to waters of the United States."  (*Id.*, ¶¶ 71, 81).

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "Both a lack of standing and a failure to exhaust administrative remedies constitute jurisdictional defects and may be addressed through a Rule 12(b)(1) motion."  *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (citing cases).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).  "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113).

### B.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a

complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "is deemed to include any

written instrument attached to it as an exhibit or any statements or documents incorporated in it

by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l*

*Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Mere "labels and

conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Court must

accept as true all factual allegations in the complaint and draw all reasonable inferences in the

plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

### C.      Leave to Amend

In general, leave to amend should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "District courts in this Circuit have repeatedly explained that, when faced with

an amended complaint, they may either deny a pending motion to dismiss as moot or consider

the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v.*

*Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (citing *Conforti v. Sunbelt Rentals,*

*Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)).

Since Defendant's motion targets the Complaint and the Proposed First Amended

Complaint, and Plaintiff has had the opportunity to respond, the Court will consider the merits of

the motion to dismiss as applied to the latter pleading.[3]  If the claims in the Proposed First

Amended Complaint cannot survive the motion to dismiss, then Plaintiff's motion to amend will

be denied as futile.  *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d

83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not

withstand a motion to dismiss pursuant to Rule 12(b)(6).") (citation omitted)), *abrogated on*

*other grounds by Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019).

## IV.   DISCUSSION

In the Proposed First Amended Complaint, Plaintiff alleges the following claims: 1)

Discharge of Contaminated Stormwater, in violation of MSG Permit conditions and CWA

Sections 1311 and 1343; 2) Failure to Develop and Implement an Adequate SWPPP, in violation

of CWA Sections 1311 and 1342; 3) Failure to Implement Adequate Control Measures and Best

Management Practices that Meet the Best Available Technology Standards, in violation of CWA

Sections 1311 and 1342; 4) Failure to Conduct Routine Inspections and Comply with General

Monitoring, Recordkeeping, and Reporting Requirements under the MSG Permit, in violation of

CWA Sections 301, 402, 1311, and 1342; and 5) Failure to Obtain Valid NPDES Permit

Coverage, in violation of CWA Sections 1311 and 1342.  (Dkt. No. 19-1).

In general, Defendant asserts five arguments in support of dismissal: 1) Plaintiff lacks

Article III standing; 2) Plaintiff's allegations are moot; 3) certain allegations are procedurally

barred because they were not set forth in Plaintiff's notice letter; 4) Plaintiff fails to state a claim;

---

[3] The Court notes that Defendant has also moved in the alternative for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. No. 24-1).  Because Defendant's motion targets the Proposed First Amended Complaint, however, the Court will review its motion pursuant to Rules 12(b)(1) and 12(b)(6).  In any event, "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Patel v. Contemporary Classics*, 259 F.3d 123, 126 (2d Cir. 2001)) (cleaned up).

and 5) Plaintiff's motion to amend is futile.  (Dkt. Nos. 24-1, 35).  The Court will address each argument in turn.

### A.    Article III Standing

#### 1.    Applicable Law

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" and "'[o]ne element of the case-or-controversy requirement is that plaintiffs must establish they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation and internal quotation marks omitted).  To establish standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  In order to establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

In cases "where the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways.  Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard College*, 600 U.S. ___, 143 S. Ct. 2141, 2157 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

"The latter approach is known as representational or organizational standing . . . [t]o invoke it, an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit.'"  *Id.* (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

### 2.      Analysis

Defendant argues that Plaintiff lacks standing because it fails to allege facts to plausibly suggest an actual or imminent injury, a causal connection to Defendant's alleged conduct, or redressability.  (Dkt. No. 24-1, at 13–17).  In response, Plaintiff contends that it has organizational standing because it can show: 1) a concrete and particularized injury to at least one of its members; 2) the injury is fairly traceable to Defendant's conduct and likely to be redressed by a favorable judicial decision; 3) Plaintiff's interest is germane to its organizational purpose; and 4) neither the claim asserted nor the relief requested requires the participation of individual members.  (Dkt. No. 31, at 24–30).

### a.      Injury

The allegations in Plaintiff's Proposed First Amended Complaint relevant to standing are generally that: Plaintiff has more than 3,000 members, "many of whom reside near and/or use and enjoy" the Hudson River and its tributaries, including the Mine Hole Brook and Rondout Creek, which are allegedly polluted by industrial stormwater runoff from Defendant's facility. (Dkt. No. 19-1, ¶ 13).  Plaintiff also alleges that this pollution affects water quality, which in turn affects the health, recreational, aesthetic, commercial, and environmental interests of its members.  (*Id.*).

The Court finds that these allegations fall short of plausibly showing injury in fact.  The Supreme Court has recognized that "[w]hile generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009).  But the plaintiff's allegations must still be specific and raise more than a "statistical

probability" of present or future harm. *Id.* at 498.  Here, Plaintiff has not alleged with any specificity how its members use Mine Hole Brook and Rondout Creek or how their use and enjoyment is affected by the alleged pollution.  Without more information, Plaintiff's allegations are too vague and speculative to plausibly suggest a concrete and particularized harm to its members that is actual or imminent.

"In part because of the difficulty of verifying the facts upon which such probabilistic standing depends, the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm . . ." *Summers*, 555 U.S. at 499.  Here, in response to Defendant's motion, Plaintiff has submitted a declaration from one of its members, Mindi B. Arcoleo.  (Dkt. No. 38).  Arcoleo avers that:

1) She lives "right off Foordmore Rd., the Road intersecting Berme Rd. where Defendant's facility is located";
2) Her property occupies the same watershed as Defendant's property, she uses well water on her property, and "[k]nowing of Defendant's water pollution from rain hitting all the equipment and junk in [Defendant's] yard," she "fear[s] for the integrity of [her] well water," and that "[a]ny pollution that goes into the soil or overland into Mine Hole Brook after rainfall could affect the quality of [her] well water";
3) She used to enjoy regularly hiking along the trail that follows Mine Hole Brook, until it was temporarily closed, and she "absolutely intends" to continue using the trail as soon as it is re-opened;
4) She and her husband regularly hike alongside Rondout Creek;
5) Her enjoyment of Mine Hole Brook and Rondout Creek is "significantly lessened" knowing of Defendant's pollution;
6) She worries about "chemicals and other pollutants from all the items in [Defendant's] yard washing into" Mine Hole Brook; and
7) She is concerned about the pollution harming wildlife and "creat[ing] an unsavory sheen on the water."

(*Id.*).

Defendant argues that the declaration should be rejected "on the grounds of untimeliness, irrelevance, and the speculative nature of its content."  (Dkt. No. 39, at 3).  Plaintiff disagrees. (Dkt. No. 42, at 4).  The Court finds Defendant's arguments unpersuasive.  Although the

declaration was filed belatedly, its contents were referenced in detail in Plaintiff's response to Defendant's motion.  (Dkt. No. 31, at 25–26).  Defendant has also had two chances to address the declaration and thus can show no prejudice from the late filing.  Further, the declaration is relevant and properly considered at this stage because Defendant challenges Plaintiff's standing and the Court's jurisdiction.

As to the substance of the declaration, the Court finds that it is sufficiently specific and concrete to support standing.  Arcoleo states that she regularly uses and "absolutely intends" to use the area along Mine Hole Brook and Rondout Creek for hiking, that she is worried about "chemicals and other pollutants" from exposed items in Defendant's yard washing into Mine Hole Brook, and that her enjoyment of the aesthetic and recreational value of the area is "significantly lessened" knowing of Defendant's pollution.  (Dkt. No. 38, at 2–3).  Although Defendant argues that Arcoleo's concerns are speculative since there is no proof of actual pollution, (Dkt. No. 43, at 9), at this stage the Court must credit Plaintiff's allegations that Defendant is continuing to discharge polluted stormwater.[4]  Therefore, based on Arcoleo's declaration, Plaintiff has plausibly shown that one of its members has suffered an injury in fact, namely the actual and imminent loss of enjoyment associated with regularly hiking along the waters allegedly polluted by Defendant.  *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing.); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183

---

[4] The Court can also plausibly infer that the pollutants in question include "oil & grease, benzene, ethylbenzene, toluene, and xylene."  (Dkt. No. 19-1, ¶ 51).  The Court recognizes that the No Exposure Certification could potentially be viewed as evidence indicating that there is no ongoing pollution and thus no actual injury to Plaintiff's members. But to the extent Defendant has placed this jurisdictional fact in dispute, it is too closely intertwined with the merits of Plaintiff's CWA claim for the Court to resolve at this stage. *See All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) ("If, however, the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial.").

(2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)); *see also Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 437 (D. Conn. 2022) (finding that the plaintiff adequately pleaded standing based on, *inter alia*, allegations that "its members use and enjoy the waters near the Terminal for recreational and aesthetic purposes, and are affected by, and concerned with, pollutant discharges") (cleaned up).  In addition, Arcoleo's alleged exposure to well water contaminated by pollution further supports a plausible inference of an injury in fact.  *See Building & Construc. Trades Council of Buffalo v. Downtown Devel., Inc.*, 448 F.3d 138, 146 (2d Cir. 2006) (finding that allegations that the plaintiffs were exposed to pollutants by working at contaminated site and drinking water from public water supplies drawn from contaminated lake were "sufficiently concrete" to allege injury in fact).

b.   **Causation**

Next, Defendant argues that Plaintiff has failed to show causation because its fear of injury is too speculative and uncertain.  (Dkt. No. 24-1, at 17).  But at this stage, Plaintiff must only allege facts to plausibly infer that its injury is "fairly traceable" to the challenged activity. Importantly, "[t]he threshold requirement of 'traceability does not mean that plaintiffs must show to a scientific certainty that defendant's effluent . . .  caused the precise harm suffered by the plaintiffs in order to establish standing."  *Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 351 (S.D.N.Y. 2009) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (*en banc*)).  Proof of causation simply requires a showing that "a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern."  *Id.* (citation omitted).

Here, Plaintiff alleges that Defendant stores items associated with industrial activities outside its facility which are exposed to precipitation and that stormwater runoff then flows into and pollutes Mine Hole Brook and Rondout Creek, thereby harming the aesthetic and recreational interests of Plaintiff's members, particularly Arcoleo.  (Dkt. No. 19-1, ¶¶ 3–4, 13, 54).  Further, Plaintiff alleges that Defendant obtained a No Exposure Certification based on false representations and that it continues to store items outside and discharge polluted stormwater without a valid permit.  (*Id.*, ¶¶ 52, 71, 81).  At this stage, these allegations are sufficient to plausibly infer that Defendant's conduct causes or contributes to Plaintiff's injury. *See Riverkeeper*, 675 F. Supp. 2d at 351 ("Defendant's failure to satisfy the SPDES Permit requirements, with concomitant harm to the health of the river, would presumably injure Riverkeepers members, who according to the Complaint derive recreational and aesthetic benefit from the Hudson River and surrounding areas.  The Complaint thus sufficiently pleads that injury to Riverkeeper's members was 'fairly traceable' to Defendant's failure to meet the requirements set forth in the SPDES Permit.").

### c.   Redressability

As to redressability, Defendant contends that "issuance of declaratory relief, an injunction, or civil penalties in this case would not necessarily put Riverkeeper's members in a position to use and enjoy Mine Hole Brook or the Rondout Creek."  (Dkt. No. 24-1, at 17).  Defendant points out that "relief pursuant to this action will have no impact on the impairment of these waterways by pollutants wholly unrelated to Facility stormwater discharges."  (*Id.*).  But redressability does not require Plaintiff to show that the Mine Hole Brook and Rondout Creek will be "returned to pristine condition."  *Borough of Upper Saddle River, N.J. v. Rockland Cnty. Sewer Dist. #1*, 16 F. Supp. 3d 294, 317 (S.D.N.Y. 2014) (citation omitted).  Rather, Plaintiff must show that, "if unchecked by the litigation, the defendant's allegedly wrongful behavior will

likely occur or continue." *Laidlaw*, 528 U.S. at 190.  Here, Plaintiff's allegations plausibly

support a finding that "Defendant's discharges continue to pollute Mine Hole Brook, Rondout

Creek, and the Hudson River with each and every rainfall exceeding .1 inches unless and until

the Court orders injunctive or other relief."  (Dkt. No. 31, at 28–29).  Accordingly, Plaintiff has

sufficiently shown redressability at this stage.

### d.    Remaining Requirements

Defendant has not disputed that Plaintiff meets the remaining requirements for

organizational standing.  As relevant here, Plaintiff alleges that its mission includes

"safeguarding the ecological and biological integrity of the Hudson River and its tributaries."

(Dkt. No. 19-1, ¶ 13).  As discussed above, Plaintiff seeks to protect the interests of its members

in the use and enjoyment of two such tributaries, Mine Hole Brook and Rondout Creek.

Therefore, the Court finds that the interests Plaintiff seeks to protect are germane to its

organizational purpose.

Lastly, the Court finds that neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit.  In general, "so long as the nature of the claim

and of the relief sought does not make the individual participation of each injured party

indispensable to proper resolution of the cause, the association may be an appropriate

representative of its members, entitled to invoke the court's jurisdiction." *Warth*, 422 U.S. at

511.  Here, as to the CWA claims asserted, Plaintiff anticipates that only one of its members will

be required to testify at trial.  (Dkt. No. 31, at 30).  Further, Plaintiff points that the requested

relief of an injunction and civil penalties does not require a determination of individualized

damages.  (*Id.*).

Accordingly, at this stage the Court finds that Plaintiff has satisfied all the requirements

of organizational standing. *See Riverkeeper*, 675 F. Supp. 2d at 352 (same); *see also Bldg. &*

14

*Const. Trades Council of Buffalo, New York & Vicinity*, 448 F.3d at 150 ("Here, because the Trades Council seeks civil penalties and injunctive relief only, not money damages, its claims do not require 'individualized proof.'  The third prong of the *Hunt* test for associational standing is therefore also clearly satisfied.").

### B.      Mootness

#### 1.      Applicable Law

In general, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  Under the CWA, a citizen may commence a civil action in federal court on his own behalf against any person who "is alleged to be in violation of . . .  an effluent standard or limitation." 33 U.S.C. § 1365(a).  Thus, a citizen must "make a good-faith allegation of continuous or intermittent violation" to confer jurisdiction under the CWA.  *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 US 49, 57, 66 (1987).  A citizen's suit under the CWA is moot when "there is no reasonable expectation that the wrong will be repeated."  *Id.* at 66 (quotation omitted) (citing *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).

"In seeking to have a case dismissed as moot, however, the defendant's burden 'is a heavy one.'"  *Id.* (quoting *W. T. Grant Co.*, 345 U.S. at 633).  "The defendant must demonstrate that it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* (quoting *United States v. Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968) (emphasis in original).  "Mootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction

by predictable 'protestations of repentance and reform.'" *Id.* (quoting *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952)).

### 2.   Analysis

Defendant argues that Plaintiff's case must be dismissed as moot because it has failed to plausibly allege any ongoing harm.  (Dkt. No. 24-1, at 18).  According to Defendant, it has cleaned up its site and been granted a regulatory exemption from the CWA, i.e., the No Exposure Certification, which has been submitted to the Court.  (*Id.*, at 18–20, 28).  Defendant has also submitted an e-mail from a DEC official dated August 23, 2023, stating that the DEC is "satisfied that the facility addressed" the prior violations and that staff "have no need to conduct another inspection at the facility to evaluate compliance."  (Dkt. No. 40-1, at 1).  In response, Plaintiff contends that it has alleged ongoing harm and that Defendant's argument "should be rejected as a premature challenge to the merits of the action."  (Dkt. No. 31, at 17–18; *see also* Dkt. No. 42, at 5–6).

In the Proposed First Amended Complaint, Plaintiff alleges that even though Defendant obtained a No Exposure Certification, Defendant has failed "to take the preliminary step of elevating exposed materials, residuals, refuse and products off the ground or even simply covering them with tarps to prevent ongoing storm water discharge."  (Dkt. No. 19-1, ¶ 70).  Plaintiff further alleges that "various materials, residuals, and/or products remain at the site exposed to precipitation."  (*Id.*, ¶ 71).  Thus, Plaintiff alleges "ongoing and continuous" violations of the CWA.  (*Id.*, ¶ 2).

To the extent Defendant argues that Plaintiff's claims are mooted by the No Exposure Certification or the DEC e-mail, the Court is unpersuaded for several reasons.  First, "the critical time for determining whether there is an ongoing violation is when the complaint is filed." *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1311 (2d Cir. 1993).

16

Plaintiff commenced this action on May 27, 2022, (Dkt. No. 1), well before the No Exposure Certification was approved on December 13, 2022 (and the later e-mail). And pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, Plaintiff's Proposed First Amended Complaint would relate back to the former date, thus supporting an ongoing violation.

Second, "a polluter's voluntary postcomplaint cessation of an alleged violation will not moot a citizen-suit claim for civil penalties even if it is sufficient to moot a related claim for injunctive or declaratory relief." *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity*, 448 F.3d at 152 (quoting *Laidlaw*, 528 U.S. at 196). Here, Plaintiff seeks civil penalties, (Dkt. No. 19-1, at 21), which are not rendered moot even if Defendant is now exempt from the CWA due to the No Exposure Certification.

Third, Defendant has not met its heavy burden in seeking dismissal based on mootness. The No Exposure Certification is a one-page checklist form filled out by Defendant, (Dkt. No. 24-1, at 28); it is not a DEC "determination of the validity of the information" Defendant provided, (Dkt. No. 19-1, ¶ 63; Dkt. No. 27-6, at 2). This does not make it "absolutely clear" that Defendant has complied with the CWA. (Dkt. No. 24-1, at 28). Nor does a two-sentence e-mail from the DEC. (Dkt. No. 40-1). Rather, Plaintiff's allegations can be read to plausibly infer that Defendant did not clean up its site, that it obtained the Certification based on false representations, and that stormwater running off exposed items continues to pollute local bodies of water. (*See also* Dkt. No. 19-1, ¶¶ 81–82). The Court finds that these allegations are made in good-faith and are sufficiently well-grounded in fact at this stage.

In sum, Plaintiff has sufficiently alleged continuing harm and dismissal is not warranted based on mootness.[5] *See also Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*, 12-CV-1025,

---

[5] Having made this finding, the Court need not address Plaintiff's allegations referring to emails from defense counsel about "junk" on the site, (Dkt. No. 19-1, ¶ 68), which Defendant argues impermissibly relate to settlement discussions.

2022 WL 17819738, at *8, 2022 U.S. Dist. LEXIS 228291, at *20–21 (N.D.N.Y. Dec. 20, 2022)

("Coeymans") (denying motion to dismiss based on mootness argument where, *inter alia*, the

plaintiff alleged ongoing and continuous violations of the CWA and the defendant did not clearly

show that its SWPPP addressed the alleged violations); *Riverkeeper, Inc. v. TCI of NY, LLC*, 12-

CV-1023, 2021 WL 860578, at *8, 2021 U.S. Dist. LEXIS 42245, at *21–22 (N.D.N.Y. Mar. 8,

2021) ("TCI") (denying motion to dismiss based on argument that "Defendants were granted an

MSGP and because the NYSDEC failed to find any violations upon a site inspection"); *Eden*

*Envtl. Citizen's Group, LLC v. Am. Custom Marble, Inc.*, 19-CV-3424, 2020 WL 733167, at *8,

2020 U.S. Dist. LEXIS 25394, at *21 (N.D. Cal. Feb. 13, 2020) (finding that "the issuance of the

No Exposure Certificate does not prohibit Plaintiff from asserting its claims in this suit").

### C.     Procedural Bar

Further, Defendant argues that Plaintiff is procedurally barred from challenging the

validity of the No Exposure Certification because Plaintiff did not raise the issue in its pre-suit

notice letter.  (Dkt. No. 24-1, at 20–22).  In response, Plaintiff contends that its letter gave

sufficient notice to Defendant of the claimed CWA violations and that its allegations regarding

the No Exposure Certification are substantially related.  (Dkt. No. 31, at 22–24).

### 1.     Applicable Law

Under the CWA, no citizen suit may be commenced prior to sixty days after the plaintiff

has given notice of the alleged violation to the EPA Administrator, the State in which the alleged

violation occurs, and to any alleged violator.  33 U.S.C. § 1365(b)(1)(A).  Related regulations

explain the required contents of such notice:

---

(Dkt. No. 35, at 13–14).  To the extent Defendant challenges Plaintiff's showing of continuing harm from a "point source," the Court has discussed that issue below in evaluating whether Plaintiff has stated a claim under the CWA. *See* § IV.D.

> Notice regarding an alleged violation of an effluent standard or limitation
> or of an order with respect thereto, shall include sufficient information to
> permit the recipient to identify the specific standard, limitation, or order
> alleged to have been violated, the activity alleged to constitute a violation,
> the person or persons responsible for the alleged violation, the location of
> the alleged violation, the date or dates of such violation, and the full name,
> address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).  "The notice and 60–day delay requirements allow a potential defendant to

identify its own violations and bring itself into compliance voluntarily, thus making a costly

lawsuit unnecessary."  *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*,

273 F.3d 481, 488 (2d Cir. 2001), *adhered to on reconsideration*, 451 F.3d 77 (2d Cir. 2006).

### 2.    Analysis

As discussed above, Plaintiff's pre-suit notice letter stated in sum and substance that

Defendant was discharging polluted stormwater into Mine Hole Brook without a CWA permit.

(Dkt. No. 19-5, at 3).  After Plaintiff filed suit, Defendant obtained a No Exposure Certification,

which would avoid the need for a CWA permit.  (Dkt. No. 24-1, at 28).  The Proposed First

Amended Complaint alleges that the Certification was obtained based on false representations

and that Defendant continues to store exposed items at its facility and discharge stormwater.

(Dkt. No. 19-1, ¶¶ 63, 66–71, 81–82).

The Court finds that Plaintiff's allegations regarding the No Exposure Certification are

not procedurally barred.  First, Plaintiff could not have made these allegations in its pre-suit

notice letter because the Certification had not yet been issued.  Second, these allegations are

substantially the same as those in the pre-suit notice letter: that Defendant is discharging a

pollutant covered by the CWA—stormwater—without a valid permit.  Indeed, "Plaintiffs are not

required to issue a new Notice of Intent to Sue Letter for each new allegation in the Complaint

provided that the original Letter contains the substance of those allegations."  *Coeymans*, 2022

WL 17819738, at *9, 2022 U.S. Dist. LEXIS 228291, at *25.  Accordingly, Defendant is not

entitled to dismissal on this basis.  *See also TCI*, 2021 WL860578, at *11, 2021 U.S. Dist.

LEXIS 422545 at *30 ("Plaintiff was not required to update its Notice of Intent to Sue letter as

the violation present at the time the letter was served was still ongoing and pleading this

violation merely changed in form rather than substance.").

### D.      Failure to State a Claim

Finally, Defendant contends that Plaintiff has failed to state a claim pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 24-1, at 12).  Defendant asserts that

the allegations in the Proposed First Amended Complaint do not plausibly satisfy the elements of

a cause of action for a violation of the CWA.  (*Id*; *see also* Dkt. No. 35, at 9–14).

As discussed above, the CWA provides that "the discharge of any pollutant by any

person shall be unlawful," except as in compliance with the law.  33 U.S.C. § 1311(a).  Thus,

permits are required for the "discharge of pollutants".  33 U.S.C. § 1342(a).  As relevant here,

the term "discharge of a pollutant(s)" means "any addition of any pollutant to navigable waters

from any point source."  33 U.S.C. § 1362(12).  In other words, "the Act formally prohibits the

'discharge of a pollutant' by 'any person' from any 'point source' to navigable waters except

when authorized by a permit[.]"  *Waterkeeper All., Inc. v. U.S. E.P.A.*, 399 F.3d 486, 491 (2d

Cir. 2005) (citing 33 U.S.C. §§ 1311(a), 1342, and 1362).

It follows that in order to state a claim under the CWA, Plaintiff must allege: 1) the

discharge of a pollutant; 2) by a person from a point source; 3) to navigable waters; 4) without a

valid permit.  In the Proposed First Amended Complaint, Plaintiff asserts five violations of the

CWA, all of which revolve around the theory that Defendant discharges stormwater into

navigable waters without a valid permit.  (Dkt. No. 19-1).  There is no dispute that stormwater is

a discharged pollutant and that Mine Hole Brook and Rondout Creek are navigable waters for

purposes of the CWA.[6]  As discussed above, Plaintiff has also plausibly alleged that Defendant failed to obtain a valid permit.

However, Defendant argues that Plaintiff has failed to plausibly allege discharge from a specific "point source."  (Dkt. No. 35, at 15).  In response, Plaintiff contends that it "need not identify a specific 'point source' under the Clean Water Act at the pleading stage."  (Dkt. No. 42, at 2).  Plaintiff also suggests that it has "sufficiently alleged facts to show that it has a reasonable belief that a point source exists at the Site."  (*Id.*).  Plaintiff adds that "[w]ithout the chance to proceed through discovery, Plaintiff cannot allege in good faith further as to which exact pipes, ditches, channels, conduits, or discrete fissures Defendant's stormwater effluent flows through on its way to Mine Hole Brook."  (Dkt. No. 31, at 27–28; Dkt. No. 42, at 2).  In reply, Defendant argues that "Plaintiff's admitted lack of good faith allegations about a specific point-source and its acknowledgement that its allegations are conclusory and speculation does not justify continuation of the case based upon what discovery may or may not show."  (Dkt. No. 43, at 4).

The term "point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).  The definition of point source is to be "broadly interpreted," however, "the phrase 'discernible, confined, and discrete conveyance' cannot be interpreted so broadly as to read the point source requirement out of the statute."  *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 219 (2d Cir. 2009) ("*Simsbury*") (citing cases).

---

[6] "Multiple courts have held that stormwater runoff is a pollutant *per se*."  *TCI*, 2021 WL 860578, at *7, 2021 U.S. Dist. LEXIS 42245, at *18 (citing cases).

In the Proposed First Amended Complaint, Plaintiff alleges that Defendant "discharges stormwater runoff" from its facility.  (Dkt. No. 19-1, ¶¶ 3, 54).  Plaintiff also alleges that "Defendant has discharged and continues to discharge stormwater associated with industrial activity that contains pollutants from point sources to waters of the United States."  (*Id.*, ¶ 81). But Plaintiff fails to identify any point source, i.e., a discernible, confined, and discrete conveyance which brings the stormwater from Defendant's facility to Mine Hole Brook and Rondout Creek, such as a culvert, pipe, or drainage ditch.

While the Court recognizes that it may be difficult to identify a specific point source without access to Defendant's property (absent something like a drone flyover), Plaintiff does not cite any authority absolving it of the need to plead this key element of a CWA claim, and the Court is not aware of any.  In *Albahary v. City and Town of Bristol, Conn*., cited by Plaintiff, the court declined to dismiss a CWA claim, but only because the plaintiff had alleged a discharge at least somewhat involving roadway culverts, an established point source.  963 F. Supp. 150, 153 (D. Conn. 1997).  In *Murtaugh v. New York*, another case cited by Plaintiff, the court declined to dismiss a CWA claim where the plaintiff had alleged that a city dump was a point source.  810 F. Supp. 2d 446, 468 (N.D.N.Y. 2011).  What these cases and others reviewed by the Court indicate is not that a plaintiff may forgo pleading a specific point source, but rather once it has done so, determining whether the alleged point source satisfies the CWA's definition is a fact-sensitive inquiry that must await summary judgment or trial.

Here, Plaintiff has not alleged any facts to even suggest a discernible, confined, and discrete conveyance bringing the polluted stormwater to Mine Hole Brook.  The only mechanism of transport alleged by Plaintiff is runoff—that the stormwater travels over land from the facility to Mine Hole Brook.  (Dkt. No. 19-1, ¶¶ 1, 3, 13).  However, it is well-established that "surface

water runoff which is neither collected nor channeled constitutes nonpoint source pollution and consequentially is not subject to the CWA permit requirement." *Simsbury*, 575 F.3d at 221.[7] Thus, Plaintiff may only rely on runoff to support its CWA claim so long as the stormwater is collected or channeled. There are no such allegations here. The Court alerted Plaintiff to the *Simsbury* holding, (Dkt. No. 41), and Plaintiff points out that the case was decided at summary judgment, (Dkt. No. 42, at 3–4). But the case only reached that stage because, unlike here, potential point sources had been identified, including a berm, which required the court to review the supporting evidence. *Id.* at 224. And the court made clear that point source discharge was an "essential element" of the plaintiff's CWA claim. *Id.* at 225.

Plaintiff also asserts that due to the Site's proximity to Mine Hole Brook, "there is a reasonable basis that channels, ditches, or other conduits exist connecting its stormwater discharges to Mine Hole Brook a mere 75 feet away." (Dkt. No. 42, at 2). This is no more than speculation, plainly insufficient for pleading purposes, and it would seem equally reasonable to guess that surface runoff alone carries stormwater the short distance to Mine Hole Brook. In addition, Plaintiff appears to suggest that piles of debris at the facility could be a point source. (*Id.*, at 4). The only relevant allegations supporting this theory are that Defendant stores outside "a pile of tires and a refuse pile allegedly from rental unit cleanouts." (Dkt. No. 19-1, ¶ 45). But Plaintiff does not allege that these piles collect, channel, or otherwise convey stormwater, and therefore, they do not plausibly amount to a point source. *Cf. Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004) (finding that piles of debris were a point source under the CWA where the piles collected water which then flowed into the stream).

---

[7] *Simsbury* recognized that while surface runoff is beyond the CWA's mandate, it still may be regulated by the states. 575 F.3d at 219 ("Although the term 'nonpoint source' is not defined in the CWA, the statute clearly indicates that there is a category of nonpoint source pollution, and leaves the regulation of nonpoint source pollution to the states.").

In sum, Plaintiff must allege a specific point source to state a claim under the CWA. Having failed to do so here, Plaintiff's CWA claim must be dismissed.  *See also Ecological Rights Found. v. P. Gas and Elec. Co.*, 713 F.3d 502, 509 (9th Cir. 2013) ("allegations of generalized stormwater runoff do not establish a 'point source' discharge absent an allegation that the stormwater is discretely collected and conveyed to waters of the United States").

### E.    Leave to Amend

As discussed above, Plaintiff's allegations in the Proposed First Amended Complaint are not sufficient to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The proposed amendments are therefore futile, and Plaintiff's motion to amend must be denied.[8]

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion to dismiss (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: <u>September 19, 2023</u>
          Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[8] The Court notes that Plaintiff has not sought leave to amend again or provided any basis to belief that any further amendment would be fruitful.